**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ALI AGHAZADEH, et al.,

      Plaintiffs,

      v.

MERRICK B. GARLAND, *in his official
capacity as Attorney General*, et al.,

      Defendants.

Civil Action No. 23-3150 (CKK)

---

**MEMORANDUM OPINION**
(August 1, 2024)

      In this action, Plaintiffs Ali Aghazadeh and Gholamhossein Aghazadeh Khoei (collectively, "Plaintiffs") seek injunctive and mandamus relief ordering Defendants Attorney General of the United States Merrick Garland, Secretary of Homeland Security Alejandro Mayorkas, Secretary of State Antony Blinken (collectively, "Defendants") to adjudicate Plaintiff Khoei's visa application. *See generally* Compl., ECF No. 1. Pending before the Court is Defendants' [10] Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6) ("Motion" or "Defs.' Mot."). Upon careful consideration of the pleadings,[1] the relevant legal authority, and the record as a whole, the Court shall **GRANT** Defendants' [10] Motion to Dismiss and **DISMISS** Plaintiffs' [1] Complaint in its entirety.

---

[1] The Court's consideration has focused on the following documents:
- Plaintiffs' Complaint ("Compl."), ECF No. 1;
- Defendants' Motion to Dismiss and Memorandum in Support Thereof ("Defs.' Mot."), ECF No. 10;
- Plaintiffs' Opposition to Motion to Dismiss ("Pls.' Opp'n"), ECF No. 11; and
- Defendants' Reply in Support of Defendants' Motion to Dismiss ("Defs.' Reply"), ECF No. 12.

## I.    BACKGROUND

Plaintiff Khoei is an Iranian national who applied for a visa at the United States Embassy in Turkey.  Compl. ¶ 2.  Prior to submitting Plaintiff Khoei's visa application to the U.S. Embassy, Plaintiff Aghazadeh, who is a U.S. citizen, filed an I-130 petition for his father (Plaintiff Khoei). *Id*. ¶ 4.  Plaintiff Aghazadeh's I-130 petition was approved by the United States Citizenship and Immigration Services ("USCIS") on June 16, 2020, and subsequently transferred to the National Visa Center ("NVC") on June 22, 2020.  *Id*. ¶¶ 5–6.  Plaintiff Khoei then submitted his DS-260 visa application by October 2020.  *Id.* ¶ 7.  On January 22, 2021, the NVC labeled Plaintiff Khoei's visa application as "Documentarily Qualified."  *Id.* ¶ 8.  The NVC then scheduled Plaintiff Khoei's interview for April 4, 2022 at the U.S. Embassy in Turkey.  *Id.* ¶ 9.  After his interview, Plaintiff Khoei was informed that "additional original documentation was required to complete the processing" of his application.  *Id.* ¶ 10.  In May 2022, Plaintiff Khoei mailed the requested documents to the U.S. Embassy.  *Id.* ¶ 11.  In June 2022, the U.S. Embassy requested that Plaintiff Khoei complete a Form DS-5535 Supplemental Question, which he completed and submitted to the U.S. Embassy within two weeks of the initial request.  *Id.* ¶ 12.  On August 17, 2022, Plaintiff Khoei was informed that his application was placed in administrative processing pursuant to Section 221(g) of the Immigration and Nationality Act ("INA").  *Id.* ¶ 13.  Plaintiff Khoei's application has remained in administrative processing to date.  *Id.* ¶ 19.

Plaintiffs initiated this lawsuit on October 20, 2023, seeking to compel Defendants to adjudicate Plaintiff Khoei's visa application.  *See generally id.*  On February 6, 2024, Defendants filed the pending Motion, seeking dismissal of Plaintiffs' Complaint under Rules 12(b)(1) and 12(b)(6).  *See* Defs.' Mot.  Plaintiffs oppose the Motion in its entirety.  *See generally* Pls.' Opp'n, ECF No. 11.  With the Motion fully briefed, the Court turns to its resolution.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (JDB); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts as evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"  *Coal for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. Of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

However, the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (RMU).  The Court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B.  Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557

(2007)).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

In resolving a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (RBW); *Hilton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).

## III.    DISCUSSION

Defendants present four (4) arguments for dismissal of Plaintiffs' Complaint: (1) Plaintiffs have named the wrong defendants; (2) Plaintiffs' claims are precluded by the consular non-reviewability doctrine; (3) Plaintiffs have not identified a non-discretionary duty that Defendants are required to take; and (4) Plaintiffs' claims fail on the merits.  Two of Defendants' arguments are meritorious, with which the Court will begin before turning to their other, unavailing arguments.

### A.  Improper Defendants

To begin, Defendants argue that none of the named defendants in this lawsuit had a role in "re-adjudicating" Plaintiff Khoei's visa application.  Defs.' Mot. at 12.  In response, Plaintiffs concede that Defendants Mayorkas and Garland were improperly named as defendants in this case.  Pls.' Opp'n at 3.  The Court will therefore dismiss the Complaint as against Defendants Mayorkas and Garland.

The parties dispute as to whether Defendant Blinken, the Secretary of State, is a properly named Defendant.  *See id.*; Defs.' Reply at 2–3.  In support of their argument, Defendants rely on the proposition that the INA "grants consular officers 'exclusive authority to review applications for visas, *precluding even the Secretary of State* from controlling their determinations.'"  Defs.' Reply at 2 (citing *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021)).  In this case, however, Plaintiffs are not "challenging a consular officer's adjudication of [Plaintiff Khoei's] visa application; they are challenging" the alleged delay in the adjudication of the visa application.  *Khoshrou v. Blinken*, No. 22-2859, 2023 WL 4930086, at *4 (D.D.C. Aug. 2, 2023) (CKK) (citation omitted) (quotation cleaned up); *see also Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (RDM) ("Control over a consular officer's visa *determination* . . . is not the same as control over the *timing* by which the consular officer considers the applications presented to her.").  Courts in this jurisdiction reject the same argument that Defendants have raised here.  *See, e.g.*, *id.*; *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) (RC).  Therefore, the Court finds that the Secretary of State, Defendant Blinken, is a properly named defendant.

### B.  Unreasonable Delay

Next, Defendants argue that Plaintiffs' claims fail on the merits because Plaintiffs have

failed to state a claim of unreasonable delay.  *See* Defs.' Mot. at 18.  In response, Plaintiffs insist

that Defendants have not adjudicated Plaintiff Khoei's visa application "within a reasonable time,"

as required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b).  Pls.' Opp'n at 9.

Although a court may order an agency "to perform a [mandatory] act, [i.e.,] to take action upon a

matter," a court may not decide "how [the agency] shall act."  *Norton v. S. Utah Wilderness*

*Alliance*, 542 U.S. 55, 62 (2004).

To determine whether a plaintiff has sufficiently alleged that agency action has been

"unreasonably delayed," courts apply the familiar "*TRAC*" factors laid out in *Telecommunications*

*Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*,

750 F.2d at 80) (internal quotation marks omitted); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147,

152 (D.D.C. 2017) (RJL) (applying *TRAC* factors to claim for mandamus relief).  Whether a delay

is unreasonable "cannot be decided in the abstract, by reference to some number of months or

years beyond which agency inaction is presumed to be unlawful, but will depend in large

part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome,

and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

In their opposition, Plaintiffs first argue that the *TRAC* analysis is inappropriate to apply at the motion to dismiss stage because it is a "fact specific inquiry." Pls.' Opp'n at 10. The Court disagrees. Although some district courts have concluded that it is premature to decide unreasonable delay claims at the motion to dismiss stage, *see Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020) (ESH) (concluding that "any determination of whether defendants have unreasonably delayed adjudication . . . is premature at this juncture"), this is the minority position. The majority in this jurisdiction, including this Court, have applied the *TRAC* factors at the motion to dismiss stage. *See, e.g.*, *Bagherian*, 442 F. Supp. 3d at 94 (applying *TRAC* factors at the motion to dismiss stage); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 (D.D.C. 2020) (CRC) (same); *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (BAH) (same); *Skalka*, 246 F. Supp. 3d at 153–54 (same); *Palakura v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (TNM) (same); *Vafaei v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-1608, 2024 WL 1213394, at *3 (D.D.C. March 21, 2024) (CKK) (same).

Accordingly, the Court concludes that it may consider whether Plaintiffs' Complaint meets the Rule 12(b)(6) pleading standards. The Court notes that it is "not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-00397, 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020) (ABJ). The Court shall now consider the *TRAC* factors in turn.

1. *TRAC* Factors One & Two

The D.C. Circuit has explained that the first *TRAC* factor—the time agencies take to make

decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second *TRAC* factor as well.  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  The inquiry centers on "whether the agency's response time . . . is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. F.D.A.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (JEB).  Because Congress has provided no statutory timeframe indicating how quickly it requires the State Department's adjudication and re-adjudication of visa applications, *TRAC* factor two is inapplicable.  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka*, 246 F. Supp. 3d at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").

In general, courts in this jurisdiction have regularly found that the Government applies a "rule of reason" to the review of visa petitions by adjudicating applications in the order they were filed.  *See e.g.*, *Muvvala v. Wolf*, No. 20-cv-02423, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) (CJN) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor.").  Simply put, the inquiry begins and ends with the consistent application of the "first-in, first-out" methodology.  Courts of this jurisdiction often look to the length of delay as a rough yardstick to determine whether that rule is, in fact, being applied.

Plaintiff Khoei had his interview on April 4, 2022, and his visa application has remained in administrative processing since then.  Compl. ¶¶ 10, 19.  Plaintiffs argue that this delay—just over eighteen (18) months at the time of the filing of Plaintiffs' Complaint, and just over twenty-seven (27) months now—is unreasonable.  *See generally id.*  However, courts in this jurisdiction routinely find that delays of numerous years are not unreasonable.  *See, e.g.*, *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-3592, 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (ABJ) (finding

delay of forty-two months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, No. 20-0402, 2021 WL 3551299, at *8–9 (D.D.C. Aug. 11, 2021) (RJL) (finding delay of forty-four months not unreasonable); *Varghese v. Blinken*, No. 21-2597, 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (CRC) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"); *Arab v. Blinken*, No. 21-1852, 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (BAH) (finding that a thirty-month delay was not unreasonable); *see also Noori v. Blinken*, No. 23-1463, 2024 WL 939990, at *3 (D.D.C. Mar. 5, 2024) (TJK) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

The time period of twenty-seven months (2.25 years) is well within the bounds of that which other courts have found reasonable. Notably, Plaintiffs concede that the first and second *TRAC* factors weigh in favor of Defendants. Pls.' Opp'n at 11 ("The first two *TRAC* factors favor Defendants because processing visas takes a baseline amount of time."). Therefore, the Court finds that the first and second *TRAC* factors do not lend credence to Plaintiffs' claims. Because *TRAC* factor one is considered the "most important" factor, *In re Core Commc'ns*, 531 F.3d at 855, this finding weighs heavily on the Court's ultimate holding.

2. *TRAC* Factors Three & Five

The third and fifth *TRAC* factors are often considered together and require the Court to consider Plaintiffs' interests, health, and welfare. *Ghadami*, 2020 WL 1308376, at *9.

Plaintiffs allege that Plaintiff Khoei has been harmed by the unreasonable delay, as it has prevented him from providing support to his daughter as she undergoes cancer treatment in the United States. Compl. ¶ 21; *see also* Pls.' Opp'n at 11. Courts in this jurisdiction have frequently considered the impact of familial separation on the health and welfare of plaintiffs under *TRAC*

factors three and five.  *See, e.g.*, *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) (BAH) (finding the third and fifth *TRAC* factors to weigh in plaintiffs' favor in light of the separation of friends, family, and loved ones); *Isse v. Whitman*, No. 22-3114, 2023 WL 4174357, at *7–8 (D.D.C. June 26, 2023) (BAH) (finding the third and fifth *TRAC* factors to weigh in plaintiff's favor in light of the separation from immediate family); *Didban*, 435 F. Supp. 3d at 177 (finding the third and fifth *TRAC* factors weigh in plaintiffs' favor in light of separation from spouse). Accordingly, Plaintiff Khoei's separation from his daughter, who is undergoing cancer treatment in the United States, undeniably impacts Plaintiff's interests.

In contending that factors three and five point in their direction, Defendants argue that "[p]rioritizing the Visa Application here will simply benefit certain noncitizens to the detriment of others who may have experienced the same or worse impacts from a delay."  Defs.' Mot. at 32. They further argue that "Plaintiffs fail to plead the type of harms that could make a third and fifth *TRAC* factors plausibly tilt in Plaintiffs' favor."  *Id.* at 33.  But Defendants fail to address why familial separation does not tilt *TRAC* factors three and five in favor of Plaintiffs, given the contrary findings within this jurisdiction as noted above.  Accordingly, the Court concludes that the third and fifth factors weigh in Plaintiffs' favor.

### 3.  *TRAC* Factor Four

The Court next considers the fourth *TRAC* factor, which notes "the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.

The Court concludes that this factor weighs against Plaintiffs.  The relief that Plaintiffs seek—the prompt adjudication of Plaintiff Khoei's visa application—would mean that others waiting for adjudication would be displaced.  *See Tate*, 513 F. Supp. 3d at 149.  Here, Plaintiffs concede that *TRAC* factor four favors Defendants, but they still request that "the entire

administrative processing line be granted additional priority." Pls.' Opp'n at 12. However, any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d 72, 76 (D.C. Cir. 1991). Furthermore, courts in this jurisdiction, including this Court, routinely decline to grant relief that would simply place one prospective visa applicant ahead of others. *See, e.g.*, *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (TJK) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. USCIS*, No. 20-3419, 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020) (RDM); *Dehghanighanatghestani v. Mesquita,* No. 22-2595, 2022 WL 4379061, at *7 (D.D.C. Sept. 22, 2022) (CKK); *Pushkar v Blinken*, No. 21-2297, 2021 WL 4318116, at *7 (D.D.C. Sept. 23, 2021) (CKK); *Desai v. USCIS*, No. 20-1005, 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021) (CKK); *Manzoor v. USCIS*, No. 21-2126, 2022 WL 1316427, at *5–*6 (D.D.C. May 3, 2022) (CKK). Accordingly, *TRAC* factor four weighs in favor of Defendants.

4.  *TRAC* Factor Six

Finally, the Court considers the sixth *TRAC* factor. This factor states that a "[c]ourt need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. A court "must determine whether the agency has acted in bad faith in delaying action." *Gona v. U.S. Citizenship & Immigr. Servs.*, No. 20-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021) (RCL). This factor is generally considered neutral without plausible allegations of agency impropriety. *See Palakura*, 521 F. Supp. 3d at 53 (considering the sixth *TRAC* factor "neutral" even though plaintiff alleged that government had engaged in "purposeful delay" and "artificially inflate[d] [] processing times").

Plaintiffs argue that Defendants' failure to act after receiving notification of Plaintiff

Khoei's hardship, as well as the additional requirements placed on Iranian applicants (like Plaintiff Khoei), are allegations sufficient to survive the motion to dismiss stage. *See* Pls.' Opp'n at 12–13. However, Plaintiffs fail to show that the delay is "nefarious or the result of ill will." *Ramirez*, 594 F. Supp. 3d at 95. Nonetheless, the lack of plausible allegations of impropriety does not weigh against Plaintiffs, and therefore this factor is neutral. *See Palakura*, 521 F. Supp. 3d at 53.

* * *

In sum, *TRAC* factors one, two, and four favor Defendants, *TRAC* factors three and five favor Plaintiffs, and *TRAC* factor six is neutral. Altogether, the Court finds that Plaintiffs have failed to allege sufficiently that agency action has been "unreasonably delayed" under the *TRAC* factors and, therefore, the Court will grant Defendants' Motion to Dismiss. The Court now turns to Defendants' other arguments.

### C. Doctrine of Consular Non-Reviewability

Next, Defendants argue that Plaintiffs' claims fail under the doctrine of consular non-reviewability. Defs.' Mot. at 15–19. This doctrine provides that "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). The doctrine of consular non-reviewability derives from "the political nature of visa determinations and . . . the lack of any statute expressly authorizing judicial review of consular officers' actions." *Id.* The scope of the doctrine also aligns with Congress's decision to commit the adjudication of visa applications exclusively to consular officers. *See* 8 U.S.C. §§ 1201(a)&(g); *see also id.* § 1361.

For nearly a century, courts in this jurisdiction have applied the doctrine of consular non-reviewability and "refused to review visa decisions of consular officials." *Saavedra Bruno*, 197 F.3d at 1159–60 (collecting cases). The D.C. Circuit has reaffirmed that the doctrine of "[c]onsular

non-reviewability shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest.*, 985 F.3d at 1024.  However, courts have held that the doctrine does not apply where "plaintiffs 'do not seek judicial review of a consular decision, but instead seek a final decision on their applications.'"  *Didban*, 435 F. Supp. 3d at 174 (quoting *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to U.S. v. Pompeo*, No. 18-013388, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019) (TSC)).  This includes where a visa application remains in administrative processing.  *See, e.g.*, *id.* at 172, 174; *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98–99 (D.D.C. 2020) (ABJ) (refusing to apply the consular non-reviewability doctrine where the "visa application remains in administrative processing"); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to U.S. v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) (GK) (holding that the consular non-reviewability doctrine does not apply where the applicant's tracker status remains in administrative processing); *Al-Gharawy*, 617 F. Supp. 3d at 11–17 (collecting cases and holding the same); *Khazaei v. Blinken*, No. 23-1419, 2023 WL 6065095, at *4–5 (D.D.C. Sept. 18, 2023) (JEB) (holding same).

Here, the doctrine of consular non-reviewability does not preclude the Court from reviewing the adjudication of Plaintiff Khoei's visa application, as it remains in administrative processing.  Plaintiff Khoei's latest update on his application informed him that it has been placed in administrative processing.  Compl. ¶¶ 13, 16–17.  Accepting Plaintiffs' facts as true, Plaintiff Khoei's application remains in administrative processing, precluding application of the consular non-reviewability doctrine.  Accordingly, the Court holds that the doctrine does not bar judicial review of Plaintiffs' claims.  *See, e.g.*, *Khoshrou*, 2023 WL 4930086, at *4.

### D.  Non-Discretionary Duty

Finally, Defendants contend that Plaintiffs' claims fail because there is no discrete agency

action that a consular officer is required to take.  *See* Defs.' Mot. at 19–26.

As the Supreme Court has held, "a claim [for unreasonably delay] under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton*, 524 U.S. at 64 (emphasis in original).  Other courts have held that "[g]ranting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action."  *Khazaei*, 2023 WL 6065095, at *6.  Furthermore, taking such an action is required by both the APA and the State Department's own regulation, and is to be done within a reasonable time.  *See Mashpee Wampanoag Tribal Council*, 336 F.3d at 1099 (noting that Section 555(b) "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time'"); *Vulupala*, 438 F. Supp. 3d at 100 (concluding that "[g]ranting or refusing a final visa application is a mandatory agency action" under 22 C.F.R. § 41.106).

Here, Plaintiffs and Defendants disagree on whether a final decision has been issued on Plaintiff Khoei's application.  Defs.' Mot. at 18 ("Plaintiffs mistakenly allege that a final decision on their Visa Application has not been reached.").  However, Defendants do not include any exhibits or declarations supporting their argument; they simply make the conclusory allegation that "the consular officer already refused the Visa Application."  *Id.*  Plaintiffs, conversely, maintain that Plaintiff Khoei "received no meaningful response or a timeline for the completion of the administrative processing of his application."  Pls.' Opp'n at 3.  In resolving a motion to dismiss, the Court must accept the Plaintiffs' factual allegations as true.  *See Settles*, 429 F.3d at 1106.  Without demonstrating that the agency has taken the discrete agency action that is required—granting or refusing the visa application—Defendants' argument fails.

## IV.    CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Defendants' [10] Motion to Dismiss. The Court shall therefore **DISMISS** Plaintiffs' [1] Complaint in its entirety.  An Order will accompany this Memorandum Opinion.

                                               /s/
                                   COLLEEN KOLLAR-KOTELLY
                                   United States District Judge